## Fannon v. Ball.

(Decided February 22, 1924.)

### Appeal from Harlan Circuit Court.

1. **Appeal and Error—Reviewing Court Must Determine Case from what Record Shows.**—Court of Appeals is compelled to determine case from what record shows.

2. **Jury—Litigant May Waive Trial by Jury.**—A litigant may waive trial by jury and submit his case to the court whether it is on the equity or ordinary side of the docket.

3. **Jury—Trial—Defendant Waived Right to Trial on Ordinary Side of Docket and Right to Jury Trial by Not Objecting to Trial of Case in Equity.**—Where an action was brought on the equity side of the docket when it should have been brought on the ordinary side, but defendant made no objection and took proof by depositions, and the witnesses were local to the county in which the cause was pending, he waived his right to trial on the ordinary side of the docket, as well as his right to an issue out of chancery for a trial of the common-law issues.

4. **Continuance—No Error in Refusing Continuance where Amended Answer and Counterclaim were Tendered Year After Issues Made.**—Court did not err in not continuing cause upon filing of amended answer and counterclaim where the pleading was tendered more than a year after issues had been made, and after the proof had been taken, and it was nowhere alleged in it that defendant did not know of the facts therein relied on at the time he filed his original answer, though he stated that at the latter time he did not notify his attorney of them.

5. **Continuance—Amended Answer and Counterclaim Held Not to Create Even Pro Tanto Defense, and Continuance Properly Denied.**—In an action against payee of note by transferee thereof, an amended answer and counterclaim alleging that plaintiff had taken property of the maker of the note, who had disappeared, on which defendant had a lien, held not to state even a pro tanto defense, without the further allegation that the taking was "wrongful" or "unlawful," etc., and the court did not err in denying a continuance.

6. **Appeal and Error—Payee of Note Cannot Complain of Personal Judgment Against Maker Not Served.**—Payee of note cannot complain of a personal judgment against maker who was not per-

sonally served in an action by a transferee of the note against the maker and payee; the claim being that under Civil Code of Practice, section 367, plaintiff could not have judgment against payee without dismissing the action as to the maker.

7. Bills and Notes—Acceptance of Check and Surrender of Note Held Not to Release Indorser from Payment of Series of Notes by Extension of Time for Payment.—Payee of notes who indorsed them to plaintiff was not released from liability on the notes because plaintiff surrendered one of them when due to the maker and accepted his check, which was not paid on presentment, and was retained by plaintiff for a short time in the hope that the maker would take it up, there being no agreement as to an extension and no consideration therefor.

HALL, LEE & JONES and SNYDER & ADKINS for appellant.

W. A. BROCK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On September 9, 1920, James Collins purchased the interest of his partner (appellant and defendant below), Pat Fannon, in a restaurant business which they were then operating in Harlan, Kentucky. The price agreed to be paid was $1,800.00, and Collins was to assume the payment of all the debts of the firm and to receive all outstanding accounts due it. Nothing was paid at the time, but Collins executed to defendant his nine promissory notes of two hundred dollars each and payable every thirty days thereafter, the first one being due October 9, 1920. They were payable at the First National Bank of Harlan, Kentucky, and bore interest at the rate of six per cent per annum from date, and it is stipulated in the face of each of them that the parties "waive presentment, protest and notice of protest, and nonpayment of same, and guarantee payment on demand after maturity." Before any of them became due and on September 29, 1920, defendant purchased of plaintiff and appellee, Smith Ball, some real property in Harlan at the price of $2,700.00, $1,800.00 of which he paid by endorsing to plaintiff the nine Collins' notes, which was done by only writing his name on the back of them and which, under our negotiable instruments law, is termed a blank endorsement, and obligates the endorser (section 3720b-34, Kentucky Statutes) to pay the amount thereof to the holder, or to any subsequent endorser who may be compelled to pay it, if prior bound parties refuse to do so. (Section 3720b-66, Kentucky Statutes). But,

in order to fix such liability on the endorser, he is entitled to presentment and notice of dishonor by and from the holder, unless it should be waived in some manner, which in this case was done in the face of the note. After plaintiff received the Collins notes, he wrote above defendant's endorsement the date thereof and also these words, "I sign the within note over to Smith Ball for value received of him." The first note, due October 9, 1920, was paid by Collins to Ball, and he received from the former a check for the second one, but it was not paid on presentment.

Defendant and Collins entered into a written contract at the time the notes were executed in which it was stipulated that if either of them should not be paid at maturity, the due dates of the others should be precipitated and the holder could treat all of them as due and proceed to collect them. On November 20, eleven days after the second note became due and was not paid, plaintiff brought this suit against defendant and Collins to recover all of the unpaid notes amounting to $1,-600.00 and interest. No service was had on Collins, since he had absconded and his whereabouts was unknown, but Fannon answered and, after making some immaterial denials, pleaded that plaintiff accepted the notes from him "without recourse" and agreed to look to Collins alone for their collection, but he did not allege that his unqualified endorsement was the result of any oversight or mistake by any one. Notwithstanding his defective pleading, proof was taken on that issue by depositions and defendant, in an incoherent and very unsatisfactory manner, attempted to sustain that defense by his testimony, but the material and pertinent answer was given by him only in response to a very leading question. Plaintiff, positively and clearly, denied any such agreement, and it was further proven and admitted that defendant made one or more inquiries about payments made or being made by Collins of the transferred notes, which evidently was a matter about which he was wholly disinterested if his theory of the case was correct.

The case, for some inconceivable cause, was brought in equity and plaintiff, about the time of the filing of the answer, moved the court to transfer it to the ordinary docket, which motion was never acted on, nor does it appear whether defendant objected to it although it is argued in briefs that he did so. A few days before plaintiff filed his petition, other creditors of Collins attached

the stock of goods in his restaurant, but the soda fountain, the corn popper, the cash register, and perhaps some other articles therein, amounting in the aggregate to something near half the value of the stock, were encumbered with liens to the extent of their value, leaving the remainder of the stock of a value of only about twelve or thirteen hundred dollars. The business was conducted in a building owned by plaintiff and there was a considerable amount of rent in arrears and for which the stock was in lien subject, however, to superior prior ones. The stock, except the encumbered articles, was sold by the sheriff under an order of court which issued in the attachment suits, and was bought by the plaintiff for the sum of $1,100.00, and he, for a while afterwards, continued to conduct the business. It appears that Collins, in connection with his restaurant business, also furnished lodging for roomers in the apartments of the second story of the building and had therein some beds, chairs and other furniture necessary for that purpose, but it nowhere appears whether those articles were attached or sold under the order of court, although it would seem that it would be quite natural to have done so.

After the proof was taken in the manner stated, the cause was submitted, but on the next day that order was set aside on motion of defendant, and he filed a pleading, styled an amended answer and counterclaim, in which he alleged "that the plaintiff, Smith Ball, took charge of and has appropriated to his own use all of said household goods above mentioned, but has failed to give any credit whatever on any of the said notes for the value thereof," which he alleged was $800.00, and he prayed that if judgment should be rendered against him the amount be credited by that sum. He also alleged in that pleading, as he had done in his original answer, that all of the restaurant stock, including the household goods referred to, was put in lien by the written contract between him and Collins to secure all of the latter's notes, and for that reason he claimed the right to the credit asserted in his amended answer. The orders show that the amended pleading was filed and a reply denying its allegations was also filed, but it is strenuously contended in brief for plaintiff, and not denied in defendant's briefs, that the court overruled the motion to file the amended answer and counterclaim, but under well known rules of practice we are compelled to determine this case from what the record shows. After the reply to the

amended answer was filed, the court again submitted the case without giving time for further proof and rendered judgment in favor of plaintiff against both defendants for the amount sued for, and to reverse it defendant, Fannon, prosecutes this appeal, insisting on a number of alleged errors, none of which do we regard as of even remote materiality, but we will refer to and briefly discuss four of the most prominent of them, during the course of which their want of merit will clearly appear.

It is first insisted that the cause having been tried by the court sitting as an equity tribunal deprived defendant of his right to a trial by jury and that the court had no jurisdiction to try the case without a jury and that his doing so was grievous error, and in support of that contention, we are cited to a number of text books and cases announcing the well known equitable principle that certain remedies therein given will not be applied when there is an adequate remedy at law, and as is sometimes said in stating that principle, equity is without jurisdiction to grant the remedy when there is an adequate remedy at law. It is, therefore, argued that there was an adequate remedy at law in this case and the court sitting as an equity one had no jurisdiction to try the case; which, to say the least of it, is a most novel and, as we think, unheard of application of that equitable doctrine. The principle of practice that a litigant may waive a trial by jury and submit his case to the court, whether it is on the equity or ordinary side of the docket, is so universally familiar that we will not consume time nor space in discussing it. A great number of cases appear in the reports of this court where the waiver has been upheld, and no case from this or any other court has been or can be found where it has been denied. In this case the defendant interposed no objection to the case being in equity or tried in equity. On the contrary he at least impliedly consented thereto, since he took his proof by depositions and the witnesses were local to the county in which the cause was pending, and he clearly waived his right to a trial on the ordinary side of the docket, as well as his right to an issue out of chancery for a trial of the common law issues, which in this case were all of them.

It is next insisted that the court should have continued the cause upon the filing of the amended answer and counterclaim. Two substantial answers might be made to that contention; one is, that the pleading was

tendered more than a year after the issues had been made, and after the proof had been taken, and it is nowhere alleged in it that defendant did not know of the fcats therein relied on at the time he filed his original answer, though he does state that at the latter time he did not notify his attorney of them. Under those conditions we would not be prepared to say that the court would have abused its discretion in declining to permit the amendment to be filed; but, waiving that point, the second answer goes to the merits of the pleading and it is, that it is nowhere alleged therein that defendant *wrongfully, unlawfully* or *without right* appropriated any of the property making up the credit insisted on; nor does the contract between appellant and Collins sustain that pleading as to any lien upon any of that property. There is not a word in it looking to the creation of a lien. Neither is there any averment therein that plaintiff did not obtain those goods under his purchase at the sheriff's sale, and it is, therefore, manifest that the pleading was wholly insufficient to create even a *pro tanto* defense.

A third insistence is, that it was grievous error *against appellant* to render a personal judgment against Collins when the latter had not been personally served, but just how that conclusion is reached is not made clear. It is sufficient to say, however, that the argument fails to convince us. It is attempted to be sustained by the claim that under the provisions of section 367 of the Civil Code plaintiff could not have judgment against appellant without dismissing the action as to Collins, who was not served, but that section sustains no such contention, especially under the facts of this case, and we must, therefore, disregard this ground.

It is lastly insisted that by accepting the check for the second note due on November 9, 1920, and holding it for a day or two after it was presented, operated to release the defendant from liability on all the notes. It might be that, if defendant had relied in any of his pleadings upon the acceptance of that check and the delivery to Collins of that note, he would have been relieved from liability to the extent of that amount, but no such defense was interposed, and he defended the action upon the theory that plaintiff was still the holder of all the notes, and that nothing had occurred to relieve him from liability on any of them except, as stated, the holding of that check and the failure of plaintiff to sue and attach for a few days after receiving it. It is insisted that by

doing so plaintiff extended the time of payment by Collins, the maker, without the consent of defendant, which, if true, under a well known principle of the law relating to commercial paper, would operate to relieve defendant as endorser on the particular paper to which the agreed extension related, which in this case would be the one note. But, for that principle to apply, there must be a binding obligation for the extension supported by a sufficient consideration, which in this case was entirely wanting. All that occurred, as appears from the record, was that plaintiff kept the check a few days after it was presented in the hope and with the expectation that Collins would take it up, but he failed to do so and this suit followed. There is not a word in the record to show that there was any sort of agreement with Collins to hold the check either upon consideration or without consideration, and at most plaintiff's action was but a slight indulgence and it in no sense operated as a binding agreement for an extension of payment, which, as we have seen, is necessary to release one secondarily liable on the instrument.

As we have hereinbefore seen, the defense that the agreement was to endorse the notes "without recourse" was not properly pleaded, but waiving that defect the proof thereon was contradictory and the court found, with abundant evidence to support it, that there was no such agreement, and we think he was sustained therein. Wherefore, the judgment is affirmed.